The **TRAVELERS INSURANCE COMPANY; Travelers Indemnity Co.; The Charter Oak Fire Insurance Company,** Plaintiffs–Counter–Defendants–Appellees,

v.

**Richard John Ratcliffe KEELING, individually, Certain Underwriters at Lloyd's of London, who are members of Syndicate Numbers 04, 10, 15, 16, 23, 25, 29, 33, 46, 47, 56, 57, 60, 69, 88, 91, 95, 109, 122, 131, 144, 151, 153, 164, 182, 194, 204, 208, 210, 211, 212, 214, 219, 235, 238, 250, 300, 311, 322, 347, 362, 365, 371, 410, 417, 422, 425, 427, 440, 469, 470, 484, 499, 510, 524, 531, 537, 538, 539, 543, 544, 555, 558, 567, 584, 604, 605, 610, 629, 650, 652, 660,**

665, 677, 739, 761, 762, 768, 771, 772, 773, 779, 782, 783, 791, 795, 796, 797, 799, 838, 849, 854, 860, 864, 867, 870, 877, 883, 896, 899, 910, 917, 918, 920, 928, 947, 952, 975, 989, 990, 997 and 998, Defendants–Counter–Claimants–Appellants.

No. 1420, Docket 93–7105.

United States Court of Appeals, Second Circuit.

Argued April 27, 1993.

Decided July 21, 1993.

Barry R. Ostrager, New York City (Simpson Thacher & Bartlett, New York City, Mary Kay Vyskocil, Andrew S. Amer, John C. Gustafsson, Marion S. Chan, of counsel), for plaintiffs-counter-defendants-appellees.

Michael J. Murphy, New York City (Lord Day & Lord, Barrett Smith, New York City, Robert E. Wilder, Marc J. Weingard, Daryl Paxson, of counsel), for defendants-counterclaimants-appellants.

Before: LUMBARD, NEWMAN, and MAHONEY, Circuit Judges.

LUMBARD, Circuit Judge:

Richard John Ratcliffe Keeling and certain Underwriters at Lloyd's of London appeal a judgment of the Southern District of New York, Keenan, J., remanding to the New York Supreme Court, New York County, this action by The Travelers Insurance Company, Travelers Indemnity Company, and The Charter Oak Fire Insurance Company (collectively "Travelers") seeking damages, declaratory judgment, and attorney's fees from the Underwriters. The district court found that the Underwriters had waived their right to remove the case pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. § 205 (1988), by including a forum selection clause in the relevant reinsurance treaties. We affirm in part and dismiss in part. We also decline to issue a writ of mandamus.

Between 1947 and 1969, Travelers reinsured its casualty risks through a series of excess reinsurance treaties with the Underwriters. Each of these treaties contains standardized "service of suit" and arbitration clauses. The service of suit clause acts as a forum selection clause by providing that, in the event the Underwriters fail to pay a claim, they "will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction." The arbitration clause provides that "[a]s a precedent to any right of action," any dispute between the parties "with reference to the interpretation of this policy or the rights with respect to any transaction involved" shall be referred to arbitration.

Beginning in the late 1970's, Travelers incurred significant asbestos-related insurance liability. Thereafter, disagreements between Travelers and the Underwriters developed regarding the extent of the Underwriters' reinsurance coverage of Travelers' asbestos-related liability. To resolve these disputes, the parties entered into the "Market Agreement" in the spring of 1983. This agreement allowed Travelers to aggregate all of the asbestos-related reinsurance claims from a single insured in a single year, thereby paying a single "retention," or deductible. In addition, the agreement limited the Underwriters' liability for expenses in product liability claims to two times the original policy limit.

Notwithstanding the Market Agreement, new disputes between the parties arose as to: (1) the scope of the term "premises" as it is used in the Market Agreement; (2) coverage of $11 million that Travelers paid to settle bad faith and punitive damage claims asserted against it by one of its customers, Armstrong World Industries; and (3) whether 17,000 asbestos-related claims pending against Metropolitan Life Insurance Company, a company insured by Travelers, are a single occurrence subject to a single retention ("Metlife dispute").[1]

On June 7, 1991, following the breakdown of negotiations between the parties, the Underwriters brought suit in the London High Court of Justice, Queens Bench Division, seeking the equivalent of a declaratory judgment regarding the meaning of the term "premises" as used in the Market Agreement and an aspect of the Metlife dispute.

On June 19, 1991, Travelers sued the Underwriters in New York Supreme Court, seeking: (1) $33 million in damages for breach of contract and of the Market Agreement; (2) $33 million in damages for breach of an implied covenant of good faith and fair dealing; (3) $33 million in compensatory damages and $500 million in punitive damages for fraudulent business practices; (4) $99 million in damages for unfair claims settlement practices; (5) attorney's fees for the Underwriters' intentional misrepresentations of their good faith during negotiations; (6) attorney's fees for the Underwriters' intentional misrepresentation as to the immediacy of a negotiated settlement; (7) a declaratory judgment as to the Metlife dispute under the Market Agreement; and (8) a declaratory judgment as to the Metlife dispute under the reinsurance treaties.

---

1. The parties disagree as to whether these disputes arise out of the reinsurance treaties or the Market Agreement.

On November 14, 1991, the Underwriters voluntarily discontinued the London action. Thereafter, they removed the New York action to the Southern District, pursuant to 9 U.S.C. § 205, which provides for the removal of a state court action related to an arbitration agreement or award covered by the Convention.

Travelers moved to remand the case to New York Supreme Court on the grounds that: (1) the service of suit clause waived the Underwriters' right to remove the case; (2) the Convention did not apply because the claims were based on the Market Agreement, which lacks an arbitration clause, thereby depriving the district court of subject matter jurisdiction; and (3) the Underwriters waived their arbitration rights by filing the London action. The Underwriters cross-moved, seeking: (1) to compel arbitration on all but the fifth and sixth claims; (2) judgment on the pleadings in the fifth and sixth claims; and (3) a stay pending arbitration.

On January 19, 1993, the district court granted the motion to remand the case and denied the cross-motion, concluding that the service of suit provision waived the Underwriters' right to removal. The Underwriters now appeal.

A. *Appellate Jurisdiction*

■ Initially, we must determine whether the remand order is directly appealable or if review is limited to a writ of mandamus.[2] We hold that the remand order is not appealable, except as it applies to the fifth and sixth claims, and dismiss the appeal except as to those claims.

A remand order that "is not a final order within the meaning of *Cohen* [*v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949) ] . . . is not reviewable by means of appeal." *Corcoran v. Ardra Ins. Co.*, 842 F.2d 31, 35 (2d Cir.1988). Thus, to determine the availability of direct review, we must determine whether the district court's order satisfies the requirements of the collateral order doctrine enunciated in *Cohen.*

To be appealable under *Cohen,* an order must "conclusively determine [a collateral] disputed question." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 11, 103 S.Ct. 927, 934, 74 L.Ed.2d 765 (1983) (citation omitted). Thus, in *Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.*, 838 F.2d 656, 658–59 (2d Cir. 1988), we held that a remand order based on the district court's interpretation of a forum selection clause was appealable. As we later explained: "In *Karl Koch*, the collateral dispute was whether the merits of the litigation should be decided in state court or in federal court; the district court, in remanding the matter to state court, conclusively determined that issue." *Corcoran*, 842 F.2d at 35.

We further explored this issue in *Corcoran,* in which the New York Superintendent of Insurance brought a state court action to recover proceeds of a reinsurance agreement. The reinsurer removed the case, and the district court remanded the case on abstention grounds, without resolving the arbitrability question. We held that the remand order was not appealable because the district court had not conclusively determined whether the dispute would be resolved in state court or arbitration. *Id.* at 35.

In *Bennett v. Liberty Nat'l Fire Ins. Co.*, 968 F.2d 969 (9th Cir.1992), the Ninth Circuit agreed with the rationale of *Corcoran.* There, an insurance liquidator brought suit in state court to recover proceeds of a reinsurance contract, and the reinsurer removed the case. The district court remanded the case on abstention grounds *and* determined the arbitrability question. Relying, in part, on our decision in *Corcoran*, the Ninth Circuit reviewed the remand order under the

---

**2.** The appealability of this order is not barred by 28 U.S.C. § 1447(d) (1988). Although this section provides that "[a]n order remanding a case to the State court from which is was removed is not reviewable on appeal or otherwise," the Supreme Court has held that it applies only to remand orders issued pursuant to § 1447(c), which provides that if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *See Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 346, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976). Here, the remand order was based upon a waiver of the right of removal, not a lack of subject matter jurisdiction. Accordingly, § 1447(d) does not bar review.

*Cohen* doctrine because "the [district] court's arbitrability ruling removed the state court's power to order arbitration on remand." *Id.* at 971.

Because the district court did not determine the forum in which the dispute will ultimately be decided, we believe that the Underwriters appeal of the remand order should be dismissed, except as to the fifth and sixth causes of action.[3] Here, as in *Corcoran,* the district court's order has not determined whether the dispute will be arbitrated or litigated in state court, and it is this inconclusiveness which renders the order non-appealable.

We are not persuaded otherwise by *McDermott Int'l, Inc. v. Lloyds Underwriters of London,* 944 F.2d 1199, 1203–1204 (5th Cir.1991), wherein the Fifth Circuit held appealable a remand order in a nearly identical case. The *McDermott* Court concluded that *Corcoran* was "wrongly decided" because the Supreme Court in *Moses H. Cone* treated as appealable "an order that . . . only decided which forum would decide the arbitrability question." *Id.* at 1203 n. 5. We acknowledged in *Corcoran* that there seemed slight if any reason to distinguish for appealability purposes between the stay order in *Moses H. Cone* and the remand order in *Corcoran,* both of which left for state court determination the issue of arbitrability. Nevertheless, we felt compelled by the explicit language of *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), to regard the non-final ruling in *Corcoran* as not available for appeal, even though it left the arbitrability issue for state court decision precisely as the stay order had done in *Moses H. Cone.* Perhaps ·it would have been possible in *Corcoran* to bring the remand ruling within the *Cohen* doctrine by considering the district court to have conclusively determined the threshold issue of which court (state or federal) would decide arbitrability, even though the subsequent issue of arbitrability itself was left unresolved. But *Corcoran* deemed the remand ruling non-final for lack of a conclusive decision as

to arbitrability, and we are obliged to accept the force of that decision in this case.

■ As for the fifth and sixth claims, as to which the Underwriters do not seek arbitration, the remand order conclusively determined that these disputes would be litigated in state court. Accordingly, we will entertain on appeal in Part C the district court's order as it applies to these claims.

### B. *Mandamus*

■ Although the Underwriters did not seek a writ of mandamus as to the remand order, we have, on occasion, treated an appeal from an unappealable interlocutory order as a motion for leave to file a petition for mandamus. *See Corcoran,* 842 F.2d at 35; *Seguros Banvenez S.A. v. S/S Oliver Drescher,* 715 F.2d 54, 56 n. 1 (2d Cir.1983). In *Corcoran,* although the district court's order was not appealable, we treated the appeal as a petition for mandamus so as to avoid "undue delay[ ]" in a case which had been removed from state court over two years earlier. 842 F.2d at 35. The instant case was brought in June 1991; accordingly, we consider this appeal as a petition for mandamus to avoid further delay.

Mandamus is not appropriate here. Mandamus is an extraordinary writ used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). Accordingly, a writ of mandamus is appropriate "when there is 'usurpation of judicial power' or a clear abuse of discretion." *Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964) (quoting *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 147, 98 L.Ed. 106 (1953)).

The district court was clearly acting within its power in construing a forum selection clause as waiving the right of removal. *See Karl Koch,* 838 F.2d at 659. Nor was the district court's conclusion that the service of suit clause waived the right to seek removal

---

**3.** The Underwriters did not move to compel arbitration as to the fifth and sixth claims, necessitating separate analysis of the appealability of the remand order as it applies to them.

a clear abuse of discretion. In reaching the opposite conclusion, the *McDermott* court, reviewing a remand order on appeal, found that the presence of the arbitration clause in the reinsurance treaty rendered the service of suit clause ambiguous as to the proper forum to determine arbitrability. *See* 944 F.2d at 1205. In rejecting this conclusion, the district court determined that there was no ambiguity because the Underwriters had known since the decision in *General Phoenix Corp. v. Maylon,* 88 F.Supp. 502 (S.D.N.Y. 1949), that this service of suit clause waived removal. Furthermore, the court reconciled this alleged ambiguity by concluding that the service of suit clause applied to actions to determine the arbitrability of a dispute. The district court also noted that to apply the *McDermott* court's express waiver requirement in this case would be "ludicrous," because here, unlike in *McDermott,* the treaties, which cover the period from 1947 to 1969, pre-date the Convention, which took effect in 1970. Finally, we note that the district court is not alone in rejecting *McDermott.* *See Welborn v. Classic Syndicate, Inc.,* 807 F.Supp. 388, 390–91 (W.D.N.C. 1992).

### C. Fifth and Sixth Causes of Action

■ We affirm the district court's remand of the fifth and sixth causes of action seeking attorney's fees for intentional misrepresentations. These claims are not based on federal law and no diversity jurisdiction has been alleged; therefore, jurisdiction in the district court was based on the supplemental jurisdiction provided for in 28 U.S.C. § 1367 (Supp. III 1991). In considering the discretionary exercise of supplemental jurisdiction, the Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, that balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988). Thus, the district court's remand of the fifth and sixth causes of action was not an abuse of discretion.

The appeal is dismissed as to those portions of the judgment remanding counts one through four, seven, and eight and affirmed as to those portions remanding counts five and six.